## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **AZMAT KHAN**, <br><br> Plaintiff, <br> v. <br><br> **UNITED STATES DEPARTMENT OF DEFENSE**, <br><br> **UNITED STATES CENTRAL COMMAND**, <br><br> and <br><br> **UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT**, <br><br> Defendants. | Civil Action No. _____ |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Azmat Khan ("Ms. Khan" or "Plaintiff"), by and through undersigned counsel, hereby alleges as follows:

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), for declaratory, injunctive, and other appropriate relief brought by award-winning investigative journalist Azmat Khan ("Plaintiff" or "Ms. Khan").

2.      By this action, Plaintiff seeks to compel the United States Department of Defense ("DoD"), United States Central Command ("CENTCOM"), and United States Agency for International Development ("USAID") (collectively "Defendants") to comply with their statutory obligations to release records requested by Plaintiff that concern civilian casualties resulting from U.S. government-commissioned airstrikes in Afghanistan, Iraq, and Syria.  Plaintiff is statutorily

entitled to disclosure of the requested records, which Defendants have withheld in violation of the Act.

## PARTIES

3.      Plaintiff Azmat Khan is an investigative journalist, a New York Times Magazine Contributing Writer, a Carnegie Fellow, and a professor of journalism.

4.      Defendant Department of Defense is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f) that has possession, custody, and/or control of the records that Plaintiff seeks.  DoD's headquarters are located at 1400 Defense Pentagon, Washington, D.C. 20301.

5.      Defendant United States Central Command is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f) that has possession, custody, and/or control of the records that Plaintiff seeks.  CENTCOM's headquarters are located at 7115 South Boundary Boulevard, MacDill AFB, Florida 33621-5101.

6.      Defendant United States Agency for International Development is an agency of the federal government within the meaning of 5 U.S.C. § 551 and 5 U.S.C. § 552(f) that has possession, custody, and/or control of the records that Plaintiff seeks.  USAID's headquarters are located at 1300 Pennsylvania Avenue, NW, Washington, D.C. 20523.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

8.      Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## FACTS

### Background

9.     Since 2014, the United States and its coalition partners (the "Coalition") have combated the Islamic State in Iraq and Syria ("ISIS")—also known as the Islamic State of Iraq and the Levant, Daesh, or Da'esh—as part of "Operation Inherent Resolve." *See, e.g.*, *Operation Inherent Resolve*, U.S. Department of Defense, https://perma.cc/9DUW-3PWB.

10.    The U.S.-led Coalition conducted approximately 34,706 strikes between August 2014 and the end of October 2019.  Combined Joint Task Force, Operation Inherent Resolve, *Monthly Civilian Casualty Report* (Dec. 5, 2019), https://perma.cc/8TAM-VN6Y.

11.    According to Major Shane Huff, CENTCOM spokesman, "[C]oalition forces work very hard to be precise in airstrikes" conducted as part of "Operation Inherent Resolve," and "are conducting one of the most precise air campaigns in military history."  *See* Azmat Khan & Anand Gopal, *The Uncounted*, N.Y. Times Magazine (Nov. 16, 2017), https://perma.cc/KS9C-YP3L.

12.    Coalition airstrikes, however, have resulted in documented deaths of numerous civilians.  Journalists and non-governmental organizations have long questioned the discrepancy between the Coalition's official tally of such deaths and their own findings.  *See id*.

13.    According to the Operation Inherent Resolve Combined Joint Task Force, at least 1,347 civilians were killed by Coalition actions since the beginning of Operation Inherent Resolve. Combined Joint Task Force, *Monthly Civilian Casualty Report*, *supra*.  The publication of an allegation as "credible" or "non-credible" in Defendants' monthly statements, *see, e.g.*, *id.*, means Defendants have generated documents related to their investigation into that allegation.  Such documents may include, but are not limited to, credibility assessment reports and closure reports.

14.    A credibility assessment, also known as a Civilian Casualty Assessment Report or CCAR, is Defendants' preliminary formal assessment of a reported or alleged civilian casualty; its purpose is to assess whether it is more likely than not that a civilian or civilians were killed by a

Coalition airstrike.  A closure report is generated as part of a Commander-Directed Investigation (also known as an AR15-6), which is performed in cases where a positive credibility assessment requires further investigation, and that further investigation is complete.

15.    On November 16, 2017, The New York Times Magazine published an article co-authored by Plaintiff titled "The Uncounted."  The article offers an unprecedented and in-depth look at the civilian death toll from the U.S.-led Coalition airstrike campaign against ISIS in Iraq and Syria.  A true and correct copy of "The Uncounted" is attached hereto as **Exhibit 1**.

16.    Plaintiff's groundbreaking article was widely disseminated and prompted discussion both across the country and around the world about the civilian death toll wrought by Coalition airstrikes in Iraq and Syria, including among current and former U.S. government officials.  Two former members of the Obama administration wrote:

> [Ms. Khan's and Mr. Gopal's] New York Times Magazine piece [is] emblematic of a bigger story that unfortunately rings true . . . .  The Times story is one of faulty intelligence driving wrong-headed assumptions that decimate innocent lives and embitter survivors.  It is a story about how a legal and bureaucratic fog can make it almost impossible for tragic mistakes to come to light, too often leaving instead a false sense of comfort that such mistakes never happened at all.  And it is a story about a policy that warrants honest discussion, and change.

Robert Malley & Stephen Pomper, *An Accounting for the Uncounted*, The Atlantic (Dec. 16, 2017), https://perma.cc/Q446-U7HZ.

17.    Congress also took note of Ms. Khan's reporting.  Senator Patrick Leahy wrote an op-ed in The New York Times in response to "The Uncounted" that called on Defendants "to improve the accuracy of its own airstrike data and overhaul the often perfunctory way it investigates reports of civilian casualties."  Sen. Patrick Leahy, *What We Owe the Innocent Victims of America's Wars*, N.Y. Times (Nov. 22, 2017), https://perma.cc/ZY2M-3MSU.  Congressman Ted Lieu, also citing "The Uncounted," sent a letter to former Secretary of Defense James Mattis

noting that "the findings of the New York Times investigation suggest the coalition is not properly executing U.S. policy in terms of limiting civilian casualties and is not accurately reporting civilian casualties." Letter from Rep. Ted W. Lieu to Sec'y of Defense James Mattis (Nov. 20, 2017), https://perma.cc/6WBR-EV38.

18.     "The Uncounted" has received numerous awards, including the 2018 National Magazine Award in Reporting from the American Society of Magazine Editors, the Overseas Press Club's Ed Cunningham Award for best magazine reporting in print or digital on an international story, the Hillman Prize for Magazine Journalism, and the Deadline Club Award for Magazine Investigative Reporting. *See T Magazine and The New York Times Magazine Honored With National Magazine Awards*, N.Y. Times (Mar. 14, 2018), https://perma.cc/MNZ8-UFEU; *Overseas Press Club of America Announces Annual Award Winners*, Overseas Press Club of America (Mar. 21, 2018), https://perma.cc/L42L-FPL5; *Judges' Comments from the 2017 Awards*, Deadline Club (May 22, 2018), https://perma.cc/HL4J-VRPK.

19.     Since publication of "The Uncounted," Ms. Khan has continued to research civilian casualties from the ongoing U.S.-led "Operation Inherent Resolve" for purposes of her reporting. As detailed below, in connection with that research, Ms. Khan has submitted additional FOIA requests to Defendants; eight of those FOIA requests are at issue in this suit.

**Plaintiff's FOIA Requests**

20.     This case involves seven FOIA requests made by Plaintiff to CENTCOM and one FOIA request made by Plaintiff to USAID (collectively the "Requests"), as detailed below.

*The First CENTCOM Request*

21.     On December 5, 2019, Ms. Khan submitted a FOIA request to CENTCOM via email (the "First CENTCOM Request").  A true and correct copy of the First CENTCOM Request (excluding Exhibit H)[1] is attached hereto as **Exhibit 2** and is incorporated by reference herein.

22.     The First CENTCOM Request sought "copies of []CENTCOM records from June 2, 2015 to the date of search for any credibility assessments, closure reports, and AR15-6 commander-directed investigations into an allegation of civilian casualties resulting from CJTF-OIR airstrikes in Hawija, Iraq on June 2-3, 2015."  Ex. 2.

23.     The First CENTCOM Request included background information to aid the agency in its search for responsive records.  *See id.*

24.     The First CENTCOM Request sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See id.*

25.     The First CENTCOM Request sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id.*

26.     On December 10, 2019, CENTCOM acknowledged receipt of the First CENTCOM Request and assigned it tracking number 20-0183.  A true and correct copy of CENTCOM's December 10, 2019 acknowledgement letter is attached hereto as **Exhibit 3.**

27.     In its December 10, 2019 acknowledgement letter, CENTCOM granted Plaintiff's request for a fee waiver and denied Plaintiff's request for expedited processing.  *See* Ex. 3.

---

[1]     Exhibit H to the First CENTCOM Request is the same news story attached hereto as Exhibit 1 (Plaintiff's New York Times Magazine investigation "The Uncounted").

*The Second CENTCOM Request*

28.     On June 30, 2020, Ms. Khan submitted a FOIA request to CENTCOM via email

(the "Second CENTCOM Request").  A true and correct copy of the Second CENTCOM Request

(excluding Exhibit B)[2] is attached hereto as **Exhibit 4** and is incorporated by reference herein.

29.     The Second CENTCOM Request sought:

[C]opies of all ex gratia disbursement records, credibility assessment records, closure report records and AR15-6 commander-directed investigation records that correspond with the following six "condolence payments" made after being assessed as incident to U.S. military operations in Iraq during 2019:

| | Country | Payment Type | Payment Amount | Source |
|---|---|---|---|---|
| 1 | Iraq | Condolence Payments | $10,000 | See Exhibit A: "Department of Defense Report on Ex Gratia Payments in the Event of property Damage, Personal Injury, or Death That Was Incident to U.S. Military Operations in Foreign Countries During 2019" |
| 2 | Iraq | Condolence Payments | $3,000 | See Exhibit A: "Department of Defense Report on Ex Gratia Payments in the Event of property Damage, Personal Injury, or Death That Was Incident to U.S. Military Operations in Foreign Countries During 2019" |
| 3 | Iraq | Condolence Payments | $3,000 | See Exhibit A: "Department of Defense Report on Ex Gratia Payments in the Event of property Damage, Personal Injury, or Death That Was Incident to U.S. Military Operations in Foreign Countries During 2019" |
| 4 | Iraq | Condolence Payments | $5,000 | See Exhibit A: "Department of Defense Report on Ex Gratia Payments in the Event of property Damage, Personal Injury, or Death That Was Incident to U.S. Military Operations in Foreign Countries During 2019" |
| 5 | Iraq | Condolence Payments | $1,500 | See Exhibit A: "Department of Defense Report on Ex Gratia Payments in the Event of property Damage, Personal Injury, or Death That Was Incident to U.S. Military Operations in Foreign Countries During 2019" |
| 6 | Iraq | Condolence Payments | $1,500 | See Exhibit A: "Department of Defense Report on Ex Gratia Payments in the Event of property Damage, Personal Injury, or Death That Was Incident to U.S. Military Operations in Foreign Countries During 2019" |

Ex. 4.

30.     The Second CENTCOM Request included background information to aid the

agency in its search for responsive records.  *See id.*

31.     The Second CENTCOM Request sought both a fee benefit as a representative of

the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C.

§ 552(a)(4)(A)(iii).  *See id.*

_____

[2]     Exhibit B to the Second CENTCOM Request is the same news story as Exhibit 1 (Plaintiff's New York Times Magazine investigation "The Uncounted").

32.     The Second CENTCOM Request also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id*.

33.     On July 8, 2020, CENTCOM acknowledged receipt of the Second CENTCOM Request and assigned it tracking number 20-0826.  A true and correct copy of CENTCOM's July 8, 2020 acknowledgement letter, excluding attachments, is attached hereto as **Exhibit 5.**

34.     In its July 8, 2020 acknowledgement letter, CENTCOM granted Plaintiff's request for a fee waiver and denied Plaintiff's request for expedited processing.  *See* Ex. 5.

*The Third CENTCOM Request*

35.     On October 21, 2020, Ms. Khan submitted a FOIA request to CENTCOM via email (the "Third CENTCOM Request").  A true and correct copy of the Third CENTCOM Request (excluding Exhibit C)[3] is attached hereto as **Exhibit 6** and is incorporated by reference herein.

36.     The Third CENTCOM Request sought "copies of all credibility assessment records, Commander-Directed Investigations records, and AR-15-6 records regarding allegations of civilian casualties resulting from the October 26-27, 2019 operation in northwestern Syria to capture or kill ISIS leader Abu Bakr al-Baghdadi."  Ex. 6.  The date range for the Third CENTCOM Request was "Oct. 26, 2019 to the date upon which [the] search is conducted."  *Id*.

37.     The Third CENTCOM Request included background information to aid the agency in its search for responsive records.  *See id*.

38.     The Third CENTCOM Request sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See id*.

---

[3]     Exhibit C to the Third CENTCOM Request is the same news story as Exhibit 1 (Plaintiff's New York Times Magazine investigation "The Uncounted").

39.     The Third CENTCOM Request also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id*.

40.     On or around October 23, 2020, CENTCOM acknowledged receipt of the Third CENTCOM Request and assigned it tracking number 21-0016.  A true and correct copy of CENTCOM's October 23, 2020 acknowledgement letter is attached hereto as **Exhibit 7.**

41.     In its October 23, 2020 acknowledgement letter, CENTCOM granted Plaintiff's request for a fee waiver and denied Plaintiff's request for expedited processing.  *See* Ex. 7.

*The Fourth CENTCOM Request*

42.      On October 23, 2020, Ms. Khan submitted a FOIA request to CENTCOM via email (the "Fourth CENTCOM Request").  A true and correct copy of the Fourth CENTCOM Request (excluding Exhibit B)[4], is attached hereto as **Exhibit 8** and is incorporated by reference herein.

43.     The Fourth CENTCOM Request sought:

[C]opies of all Credibility Assessment, Closure Report, Commander-Directed Investigation, or AR-15-6 records regarding the civilian casualty report of a Jan. 6, 2017 Coalition airstrike in Mosul, which CENTCOM recently assessed to be credible.  This request seeks all enclosures, exhibits and attachments within or referenced in these records, including but not limited to the following: mIRC logs or other chat and internet relaying message logs, Full Motion Video (FMV) or other video referenced, solatia assessments, emails, photos, post-strike imagery, screenshots, still image captures, and other images.

Ex. 8.

44.     The Fourth CENTCOM Request included background information to aid the agency in its search for responsive records.  *See id*.

---

[4]     Exhibit B to the Fourth CENTCOM Request is the same news story as Exhibit 1 (Plaintiff's New York Times Magazine investigation "The Uncounted").

45.     The Fourth CENTCOM Request sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See id*.

46.     The Fourth CENTCOM Request also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id*.

47.     On October 28, 2020, CENTCOM acknowledged receipt of the Fourth CENTCOM Request and assigned it tracking number 21-0017.  A true and correct copy of CENTCOM's October 28, 2020 acknowledgement letter is attached hereto as **Exhibit 9.**

48.     In its October 28, 2020 acknowledgement letter, CENTCOM granted Plaintiff's request for a fee waiver and denied Plaintiff's request for expedited processing.  *See* Ex. 9.

*The Fifth CENTCOM Request*

49.     On October 28, 2020, Ms. Khan submitted a FOIA request to CENTCOM via email (the "Fifth CENTCOM Request").  A true and correct copy of the Fifth CENTCOM Request (excluding Exhibit D)[5] is attached hereto as **Exhibit 10** and is incorporated by reference herein.

50.     The Fifth CENTCOM Request sought

[C]opies of all Credibility Assessment, Closure Report, Commander-Directed Investigation, or AR-15-6 records regarding . . . three civilian casualty reports . . . that were assessed to be credible, according to CENTCOM releases.
This request seeks all enclosures, exhibits and attachments within or referenced in these records, including but not limited to the following: mIRC logs or other chat and internet relaying message logs, Full Motion Video (FMV) or other video referenced, solatia assessments, emails, photos, post-strike imagery, screenshots, still image captures, and other images.

Ex. 10.

---

[5]     Exhibit D to the Fifth CENTCOM Request is the same news story as Exhibit 1 (Plaintiff's New York Times Magazine investigation "The Uncounted").

51.     The Fifth CENTCOM Request specified that it sought records about three credible incidents on April 20, 2015; March 5, 2016; and July 18, 2016.  *See id*.

52.     The Fifth CENTCOM Request included background information to aid the agency in its search for responsive records.  *See id*.

53.     The Fifth CENTCOM Request sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See id*.

54.     The Fifth CENTCOM Request also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id*.

55.     On November 12, 2020, CENTCOM acknowledged receipt of the Fifth CENTCOM Request and assigned it tracking number 21-0023.  A true and correct copy of CENTCOM's acknowledgement letter is attached hereto as **Exhibit 11.**

56.     In its November 12, 2020 acknowledgement letter, CENTCOM granted Plaintiff's request for a fee waiver and denied Plaintiff's request for expedited processing.  *See* Ex. 11.

*The Sixth CENTCOM Request*

57.     On March 1, 2021, Ms. Khan submitted a FOIA request to CENTCOM via email (the "Sixth CENTCOM Request").  A true and correct copy of the Sixth CENTCOM Request (excluding Exhibit A)[6] is attached hereto as **Exhibit 12** and is incorporated by reference herein.

58.     The Sixth CENTCOM Request sought "copies of all Credibility Assessment, Closure Report, Commander-Directed Investigation, or AR-15-6 records regarding the civilian casualty reports assessed as 'credible' or 'non-credible' in CentCom press releases from 4/26/2018 to the date of search, as detailed" in the Sixth CENTCOM Request.  Ex. 12.

---

[6]     Exhibit A to the Sixth CENTCOM Request is the same news story as Exhibit 1 (Plaintiff's New York Times Magazine investigation "The Uncounted").

59.     The Sixth CENTCOM Request further sought "all enclosures, exhibits and attachments within these records, including but not limited to the following: collateral damage estimates (CDE), legal reviews, mIRC logs or other chat and internet relaying message logs, solatia assessments, emails, photos, post-strike imagery, screenshots, still image captures, and other images." *Id*.

60.     The Sixth CENTCOM Request included background information to aid the agency in its search for responsive records.  *See id*.

61.     The Sixth CENTCOM Request sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See id*.

62.     The Sixth CENTCOM Request also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id*.

63.     On March 4, 2021, CENTCOM acknowledged receipt of the Sixth CENTCOM Request and assigned it tracking number 21-0166.  A true and correct copy of CENTCOM's March 4, 2021 acknowledgement letter is attached hereto as **Exhibit 13.**

64.     In its March 4, 2021 acknowledgement letter, CENTCOM granted Plaintiff's request for a fee waiver and denied Plaintiff's request for expedited processing.  *See* Ex. 13.

*The Seventh CENTCOM Request*

65.     On August 30, 2021, Ms. Khan submitted a FOIA request to CENTCOM via email (the "Seventh CENTCOM Request").  A true and correct copy of the Seventh CENTCOM Request (excluding Exhibit E)[7]  is attached hereto as **Exhibit 14** and is incorporated by reference herein.

66.     The Seventh CENTCOM Request sought:

---

[7]     Exhibit E to the Seventh CENTCOM Request is the same news story as Exhibit 1 (Plaintiff's New York Times Magazine investigation "The Uncounted").

(1) standard operating procedures for Civilian Casualty Reporting and Response for the U.S. combat operations in Afghanistan and (2) initial assessments, credibility assessments, closure reports, Commander-Directed Investigations, and AR-15-6 records conducted between 29 August 2021 and the time of search regarding the allegation of civilian casualties resulting from a U.S. strike in Kabul, Afghanistan on 29 August 2021.

Ex 14.

67.    The Seventh CENTCOM Request included background information to aid the agency in its search for responsive records.  *See id*.

68.    The Seventh CENTCOM Request sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See id*.

69.    The Seventh CENTCOM Request also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id*.

70.    On September 8, 2021, CENTCOM acknowledged receipt of the Seventh CENTCOM Request and assigned it tracking number 21-0518.  CENTCOM's September 8, 2021 acknowledgement letter misstated the scope of the Seventh CENTCOM Request by limiting the date range to August 29, 2021 through September 2, 2021.  A true and correct copy of CENTCOM's September 8, 2021 acknowledgement letter is attached hereto as **Exhibit 15**.

71.    In its September 8, 2021 acknowledgement letter, CENTCOM granted Plaintiff's request for a fee waiver and denied Plaintiff's request for expedited processing.  *See* Ex. 15.

*The USAID Request*

72.    On September 17, 2019, Ms. Khan submitted a FOIA request to USAID via online portal (the "USAID Request").  A true and correct copy of the USAID Request is attached hereto as **Exhibit 16** and is incorporated by reference herein.

73.     The USAID Request sought "records since January 1, 2015 assessing allegations of civilian casualties resulting from Operation Freedom's Sentinel, Resolute Support or other U.S. combat operations in Afghanistan, as well as USAID records of any payments (whether ex gratia, condolence, or other kind of payment) made in response to these allegations." Ex. 16.  The date range for the USAID Request was "between January 1, 2015 and the time of the search." *Id*.

74.     The USAID Request sought both a fee benefit as a representative of the news media pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).  *See id*.

75.     The USAID Request also sought expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).  *See id*.

76.     On September 19, 2019, USAID acknowledged receipt of the USAID Request and assigned it tracking number F-00245-19.  A true and correct copy of USAID's September 19, 2019 acknowledgement letter is attached hereto as **Exhibit 17**.

77.     In its September 19, 2019 acknowledgement letter, USAID granted Plaintiff's request for a fee benefit as a representative of the news media and denied Plaintiff's request for expedited processing.  *See* Ex. 17.

78.     On October 28, 2020, November 9, 2020, December 4, 2020, and January 14, 2021, Ms. Khan sought updates from USAID as to the processing of the USAID Request.  A true and correct copy of these requests for an estimated date of completion are attached hereto, collectively, as **Exhibit 18**.

79.     On July 19, 2021, a USAID FOIA specialist discussed the status of the USAID Request with Ms. Khan by phone.  The USAID FOIA specialist stated that searches for responsive records were still underway.

**Current Status of the Requests**

80.     As of the filing of this Complaint, Plaintiff has received neither a final determination nor any records in response to any of the Requests.

81.     Defendants have not cited any exemptions to withhold records or portions thereof that are responsive to the Requests.

82.     As of the filing of this Complaint:

The First CENTCOM Request has been pending for 664 days.

The Second CENTCOM Request has been pending for 457 days.

The Third CENTCOM Request has been pending for 344 days.

The Fourth CENTCOM Request has been pending for 339 days.

The Fifth CENTCOM Request has been pending for 337 days.

The Sixth CENTCOM Request has been pending for 213 days.

The Seventh CENTCOM Request has been pending for 31 days.

The USAID Request has been pending for 742 days.

**CAUSES OF ACTION**

**COUNT I: VIOLATION OF FOIA FOR FAILURE TO COMPLY
WITH STATUTORY DEADLINES
(All Defendants)**

83.     Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 82 as though fully set forth herein.

84.     Defendants are agencies subject to FOIA.  5 U.S.C. §§ 552(f), 551.

85.     The Requests properly seek records within the possession, custody, and/or control of Defendants under FOIA.

86.     The Requests complied with all applicable regulations regarding the submission of FOIA requests.

87.    Defendants failed to make a timely determination regarding Plaintiff's Requests, violating the statutory deadline imposed by FOIA.  5 U.S.C. § 552(a)(6)(A).

88.    Plaintiff has or is deemed to have exhausted applicable administrative remedies with respect to the Requests.  5 U.S.C. § 552(a)(6)(C)(i).

**COUNT II: VIOLATION OF FOIA FOR UNLAWFUL
WITHHOLDING OF AGENCY RECORDS
(All Defendants)**

89.    Plaintiff repeats, realleges, and incorporates the allegations set forth in the foregoing Paragraphs 1 through 82 as though fully set forth herein.

90.    Defendants are agencies subject to FOIA.  5 U.S.C. §§ 552(f), 551.

91.    The Requests properly seek records within the possession, custody, and/or control of Defendants under FOIA.

92.    The Requests complied with all applicable regulations regarding the submission of FOIA requests.

93.    Defendants have not released any records or portions thereof in response to the Requests.

94.    Defendants have not cited any exemptions to withhold records or portions thereof that are responsive to the Requests.

95.    Defendants have not identified whether or how release of the records sought by the Requests would foreseeably harm an interest protected by a FOIA exemption and/or why disclosure is prohibited by law.  5 U.S.C. § 552(a)(8).

96.    Defendants have improperly withheld records responsive to the Requests in violation of FOIA.  5 U.S.C. § 552(a)(3)(A).

97.    Plaintiff has and/or is deemed to have exhausted applicable administrative remedies with respect to the Requests.  5 U.S.C. § 552(a)(6)(A)(ii); *id*. § 552(a)(6)(C)(i).

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests this Court:

(1) order Defendants to conduct a search reasonably calculated to identify all records responsive to the Requests and to immediately disclose, in their entirety, all records responsive to Requests that are not specifically exempt from disclosure under FOIA;

(2) issue a declaration that Plaintiff is entitled to disclosure of the requested records;

(3) enjoin Defendants from continuing to withhold any and all non-exempt records or portions thereof responsive to the Requests;

(4) award Plaintiff reasonable attorney fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) grant such other relief as the Court may deem just and proper.

Dated: September 30, 2021

Respectfully submitted,

/s/ *Katie Townsend*

Katie Townsend
N.Y. Bar No. 5480199
Email: ktownsend@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Phone: 202.795.9303
Facsimile: 202.795.9310

*Counsel for Plaintiff*